UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JENNIFER ELIZABETH LEE, wife of and CRAIG LEE | CIVIL ACTION |
| v. | NO. 13-0590 |
| PEARL RIVER BASIN LAND AND DEVELOPMENT COMPANY, LLC, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court are several motions: (1) The Town of Pearl River's motion for summary judgment; (2) Pearl River Basin Land and Development Company, LLC's motion to dismiss; (3) the plaintiffs' motion for extension of time to provide expert reports; and (4) defendants' motions to strike plaintiffs' expert witnesses or, in the alternative, request to extend deadline for defendants to provide expert reports. For the reasons that follow, the motion for summary judgment is GRANTED; the motion to dismiss is DENIED; the plaintiffs' motion for extension of time to provide expert reports is GRANTED; the Town's motion to strike plaintiffs' expert witnesses is DENIED as moot; and PRBL's motion to strike plaintiffs' expert witnesses is DENIED, and its request for an extension to provide expert reports is GRANTED.

**Background**

This lawsuit arises from personal injuries allegedly sustained when the plaintiff, while operating his skiff on a tributary of the Pearl River in St. Tammany Parish, hit his head on an unmarked and

1

unlit bridge.

On April 1, 2012 Craig Lee was operating his 21-foot center console fishing boat on the Pump Slough waterway in Pearl River, Louisiana. Suddenly and without warning, his head struck the unlit and unmarked bridge constructed across the waterway.[1] On April 1,

---

[1] In the complaint, the plaintiffs allege that Mr. Lee's boat allided with unlit and unmarked support pilings to a bridge constructed across the waterway but Mr. Lee has submitted an affidavit in which he specifies that his head hit the bridge. In an unsworn submission, the plaintiffs submit the following factual narrative:
> [O]n April 1, 2012...Plaintiff, Craig Allen Lee, was operating his boat along with a friend at night after checking fishing lines when suddenly...he was struck in the head by an unmarked, unlit, bridge crossing over the Pump Slough waterway with supporting pilings. The impact from the blow rendered Mr. Lee unconscious, and he stopped breathing. He was resuscitated by the other passenger in the boat, who then brought the boat to the shore where an ambulance picked him up and transported him to LSU Interim Hospital.
> ...Mr. Lee sustained serious injuries, including, but not limited to, a broken neck, a large laceration over the right side of his skull, a skull fracture with bilateral cerebral contusions. Due to the severe injuries, Mr. Lee remained as an inpatient for 12 days at LSU. [Thereafter] Mr. Lee was transferred from LSU to Touro Hospital for inpatient rehabilitation due to the traumatic brain injury that was caused by the trauma of the April 1, 2012 incident.... Since this accident he has been unable to return to work, and his wife has had to seek employment outside of the home. [T]his has been a life altering event for Mr. Lee and his family, and their future is now uncertain due to his significant, debilitating injuries.

None of these facts are of record.

2013 Lee and his wife sued Pearl River Basin Land and Development Company, LLC (PRBL), the Town of Pearl River, the State of Louisiana, and three fictitious insurers in state court. Later that same day, the Lees sued PRBL, the Town of Pearl River, and the three fictitious insurers in this Court. The Lees allege PRBL's negligence in failing to adequately mark the support pilings that caused Mr. Lee's injuries; they allege that the State of Louisiana (named as a defendant only in the state court proceedings) owned the water bottom/bed of the "pump slough", a navigable body of water; and they allege that the Town of Pearl River owned or maintained the property on which the bridge is attached and breached its duty to insure that it was not hazardous. Plaintiffs seek to recover an estimated $2,000,000 in damages for Mr. Lee's physical and mental injuries, as well as Mrs. Lee's loss of consortium.

The Town of Pearl River answered in this federal litigation on June 19, 2013, and PRBL filed its answer and amended answer in October 2013. Counsel participated in a scheduling conference, after which time the Court issued a scheduling order, selecting the pretrial conference date (July 24, 2014), the jury trial date (August 25, 2014), and corresponding deadlines for discovery and motion practice.

On December 18, 2013 PRBL filed a motion to compel discovery, which was granted on January 13, 2014. In granting the motion to

compel, Magistrate Judge Roby also ordered that an award of reasonable expenses, including attorney's fees be awarded against plaintiffs in PRBL's favor pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Magistrate Judge Roby ultimately determined that $697.50 in fees was reasonable, and ordered that the plaintiffs pay PRBL not later than 20 days from her February 11, 2014 order.  Although the January 13 order required plaintiffs to provide complete responses to PRBL's discovery within 10 days from the order, the plaintiffs still have not responded to the discovery.

On February 18, 2014, the Town of Pearl River filed a motion for summary judgment and a request for oral argument on its motion, noticing the motion for submission on March 26, 2014.  PRBL has noticed the plaintiffs' depositions four times but, each time, plaintiffs' counsel has advised that plaintiffs were unavailable, even when plaintiffs' counsel had previously agreed to the date. On March 10, 2014, for example, less than 48 hours before the plaintiffs' depositions were to be taken, plaintiffs filed a motion to quash the depositions based on plaintiffs' intent to seek voluntary dismissal; after granting the defendants' motion to expedite hearing on the motion to quash, Magistrate Judge Roby denied the motion.  Shortly after requesting to quash their depositions on March 10, the plaintiffs filed a motion to dismiss without prejudice so that plaintiffs could proceed only with their

state court lawsuit.  On April 2, 2014 this Court denied the plaintiffs' motion, observing:

> The plaintiffs' request to dismiss their lawsuit is, at best, dilatory.  It is presented more than 11 months after the lawsuit was filed.  The request comes after the defendants have answered; after counsel participated in a scheduling conference and a scheduling order issued; after a motion to compel was decided adversely to plaintiffs and plaintiffs were taxed attorney's fees; after a dispositive motion for summary judgment and accompanying request for oral argument was filed; and after the plaintiffs have persistently obstructed discovery efforts initiated by defendants, including by filing a motion to quash, which was decided adversely to plaintiffs.  Plaintiffs cannot simply file a lawsuit in federal court, sit back and refuse to advance the case, and be granted an unconditional without prejudice dismissal with a dispositive motion scheduled for hearing and the trial date five months away.

See Order and Reasons dated April 2, 2014.  Meanwhile, on March 14, 2014, the magistrate judge had denied the plaintiffs' request that their depositions be quashed.  The plaintiffs appealed the magistrate judge's order denying their motion to quash, but this Court affirmed the magistrate judge's ruling.

The Town of Pearl River now seeks summary judgment and PRBL seeks dismissal of the plaintiffs' claims; alternatively, both defendants request that the Court strike plaintiffs' expert witnesses or provide defendants more time to submit their expert reports.  And, the plaintiffs seek an extension of time to provide expert reports.

                              I.
                              *A.*

Federal Rule of Civil Procedure 56 instructs that summary

5

judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v.

John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

*B.*

The plaintiffs allege that the Town of Pearl River "owned and/or maintained the property on which the bridge is attached to and had a duty to insure that it did not represent a hazard to the Petitioner Craig Allen Lee, as it had 'garde' of the entire area." The Town submits that summary judgment in its favor is warranted because (1) it is undisputed that the Town does not own the bridge in question; (2) it does not own or have custody or control over the property to which the bridge is attached; and (3) it owed no duty to Mr. Lee under general maritime or Louisiana law. The plaintiffs do not dispute that general maritime law and Louisiana law apply to this case; their only asserted basis for imposing liability on the Town is that the Town "has garde over the bridge at issue and/or the land to which the bridge is attached."

It is undisputed that this litigation, which arises from an alleged tort that occurred on navigable waters, falls within the Court's maritime tort jurisdiction. "With admiralty jurisdiction comes the 'application of substantive admiralty law.'" In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010, 808 F. Supp. 2d 943, 951 (E.D. La. 2011)(quoting

Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 545 (1995)), *aff'd*, In re Deepwater Horizon, 745 F.3d 157 (5th Cir. 2014).  Likewise, the parties do not dispute that admiralty does not exclude application of state law "when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction."  Id. (quoting Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 375 n.42 (1959)).

When a moving vessel collides with a fixed object, there is a rebuttable presumption that the moving vessel is at fault.  The Oregon, 158 U.S. 186, 197 (1895).  This presumption can be rebutted if the plaintiff proves that the allision was caused by an Act of God, the negligence of a third-party, or the fault of the stationary object.  See Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 794-95 (5th Cir. 1977).  Here, the plaintiff contends that the Town had garde over the area to which the bridge is attached and, therefore, by extension, had garde over the bridge. Whether maritime law or state law applies, the plaintiff's theory fails on the record.

To establish negligence under general maritime law, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury."  In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir. 1991), cert. denied, Abshire v. Gnots-Reserve, Inc.,

502 U.S. 865 (1991). "[F]ederal regulations governing maritime conduct establish the applicable standard of care if the plaintiff belongs to the class of persons the regulation is designed to protect and the statute intends to protect against the risk of harm that occurred." Serigne v. Cox Operating, LLC, No. 06-5861, 2008 WL 4003117, at *2 (E.D. La. Aug. 26, 2008)(citing Pennzoil Producing Co. v. Offshore Express, Inc., 943 F.2d 1465, 1471-72 (5th Cir. 1991)).

33 C.F.R. § 118.1 requires that "all persons owning or operating bridges over the navigable waters of the United States ... shall maintain at their own expense the lights and other signals required by this part." Applying this regulation to the summary judgment record, which establishes that the Town neither owns or operates the bridge (nor is the permittee for its construction or maintenance), it follows that there is no duty imposed by federal law on the Town to install or maintain lights on the bridge over the pump slough. Plaintiffs point to no other federal regulation or provision of maritime law that would impose a duty on the Town to light the bridge.

Turning to whether state law imposes such a duty, Louisiana Civil Code article 2317.1[2] provides:

---

[2] La.Civ.Code art. 2317 instructs that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody...."

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La.C.C. art. 2317.1. Ownership presumptively establishes the requisite benefit, control, and authority to find garde. See Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La. 1991). But even absent ownership a person can have custody or garde over something if he "bears such a relationship as (1) to have the right of direction and control over [it], and (2) to draw some kind of benefit from [it]." See Anh Ngoc Vo v. Chevron, U.S.A., Inc., No. 13-1794, 2013 WL 3983934, at *5 (E.D. La. July 31, 2013)(Engelhardt, J.)(quoting King v. Louviere, 543 So.2d 1327, 1329 (La. 1989)); see also Coulter v. Texaco, 117 F.3d 909, 913 (5th Cir. 1997). Both factors must be present. Id. Notably, when injury is caused by a specific thing, that thing is considered "the object" with respect to the issue of custody; and, the property on which the injury occurred is not considered "the object" unless an inherent defect in the property caused the injury. See Doughty v. Insured Lloyds Ins. Co., 576 So. 2d 461, 464 (La. 1991)(defective machinery located on the property was considered "the object", not the property itself); see also Dupree v. City of New Orleans, 765 So. 2d 1002 (La. 2000)(where cause of the injury was a cave-in on a New Orleans city street, property was considered "the object"

10

with respect to the issue of custody).

Does the Town have garde over the bridge?

The Town submits that it does not under these circumstances of record:

- The Town does not own or operate the bridge over the pump slough.
- The Town does not maintain, have custody of, derive a benefit from, or have control over the bridge.
- The U.S. Army Corps of Engineers issued the permit to PRBL to construct the bridge sometime before Hurricane Katrina.
- The Town does not own the property on which the bridge was connected; the State of Louisiana owns the property connected to the bridge.
- The property connected to the bridge consists of a parking lot, grassy area with park benches, and the boat launch into the pump slough, all of which are free to use by the public.
- The Town cuts the grass of the bridge-adjacent property, as needed.

The plaintiffs counter that they have competent evidence showing that the Town "has garde over the bridge at issue and/or the land to which the bridge is attached"; plaintiffs submit that:

- Sometime before Mr. Lee's accident, one Ronald Marshall complained to the Mayor of Pearl River "about the bridge" and the Mayor's response was "It's not my problem, go to the Corps of Engineers."
- No navigational lights or reflective markings were installed on the bridge crossing the pump slough at the time of Mr. Lee's accident.
- The land upon which the west end of the bridge rests and the surrounding land adjacent to it, including a boat launch, parking lot and gravel road leading up to it, as well as park benches and street lights, is maintained by the Town.

The plaintiffs submit that the Town's activities "demonstrate that the area where the bridge ... is situated is within Pearl River's custody and control." Moreover, plaintiffs suggest, the parties

genuinely dispute material facts respecting garde that preclude summary judgment; in particular, the plaintiffs submit that the Town failed to add lights to the bridge despite attracting people to the area to boat.  But there are no facts in dispute that, if resolved in the plaintiffs' favor, would permit a finding that the Town had garde over *the bridge*.

The Court finds no genuine dispute as to any material issues of fact as to whether the Town had garde over the bridge.  The plaintiffs do not contend that the Town owned the bridge or obtained the permit to build the bridge many years ago.  Therefore, the plaintiffs must prove that the Town exercised direction and control over the bridge, and that it derived substantial benefit from it, in order to rebut the presumption that the owner of the bridge maintained garde of it.  The plaintiffs have failed to do so.  Their evidence respecting direction and control is specific to the land adjacent to the bridge -- not to the object of injury, the bridge itself.  Mr. Lee was not injured by sitting on a defective park bench, traversing an unlit parking lot, or tripping in tall grass in the area adjacent to the bridge.  He was injured, during a nighttime pleasure boat outing, when his head struck the bridge.

Accordingly, although the summary judgment record definitively establishes  -- at the very most -- that the Town has custody, direction, and control over the land adjacent to the bridge, the plaintiffs' attempt to bootstrap custody of a park and boat launch

adjacent to a bridge to custody over the bridge itself must fail. Cf. Baker v. Murphy Oil USA, Inc., 816 So. 2d 329, 333 (La. App. 4 Cir. 2002)("As a general principle 'a landowner is not usually held liable for injuries which occur from defects on adjacent property'"). The plaintiffs have not shown that the Town has direction and control over the bridge, the object that actually caused Mr. Lee's injury. Because the Town does not have custody or garde of the bridge, it did not have a legal duty to prevent its allegedly hazardous, unlit condition from harming Mr. Lee. The Town's motion for summary judgment is granted.

II.

PRBL seeks dismissal of the plaintiffs' claims against it based on plaintiffs' well-chronicled, bordering on contempt of court, failures to comply with this Court's discovery orders, or on the ground that plaintiffs have failed to diligently prosecute their lawsuit. The plaintiffs counter that, at most, lesser sanctions than dismissal are warranted where the plaintiffs personally are not at fault for the delays and PRBL has not been prejudiced.

Pursuant to Federal Rule of Civil Procedure 37, the Court may impose sanctions, including dismissal of lawsuit in whole or in part, for a party's failure to cooperate in discovery, failure to comply with a Court order, or failure to attend its own deposition. Relatedly, Federal Rule of Civil Procedure 41(b) allows the Court

to dismiss with prejudice a lawsuit "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." The Fifth Circuit has "consistently recognized ... that dismissal with prejudice 'is an extreme sanction that deprives a litigant of the opportunity to pursue his claim.'" See Callip v. Harris County Child Welfare Dept., 757 F.2d 1513, 1519 (5th Cir. 1985)(citation omitted). Dismissal with prejudice is appropriate when (1) there is a clear record of delay or contumacious conduct by the plaintiffs, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile. See id.[3] Alternatives to dismissal include the "[a]ssessment of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional

---

[3] With respect to dismissing a case as a sanction for violating a discovery order, the Fifth Circuit instructs that:
> [S]everal factors ... must be present before a district court may dismiss a case with prejudice as a sanction for violating a discovery order: (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;" (2) the violation of the discovery order must be attributable to the client instead of the attorney, (3) the violating party's misconduct "must substantially prejudice the opposing party;" and (4) a less drastic sanction would not substantially achieve the desired deterrent effect.

Moore v. Citgo Refining and Chemicals Co., L.P., 735 F.3d 309, 316 (5th Cir. 2013)(quoting Doe v. Am. Airlines, 283 Fed.Appx. 289, 291 (5th Cir. 2008)(per curiam)).

dismissal, dismissal without prejudice, and explicit warnings." Id. at 1521(citation omitted). Notably, most cases affirming dismissals with prejudice involve one or more of these "aggravating factors": "(1) delay attributable directly to the plaintiff, rather than his attorney; (2) actual prejudice to the defendant; and (3) delay caused by intentional conduct." Id. at 1519.

The record confirms the chronic nature of plaintiffs' counsel's failure to comply with discovery obligations and discovery orders. As of the filing of PRBL's motion to dismiss, plaintiffs still had not produced written discovery responses (despite being moderately sanctioned for not doing so by the magistrate judge) and plaintiffs still had not appeared for their depositions. Lesser sanctions, PRBL submits, did not prompt plaintiffs' compliance: plaintiffs have continued to ignore discovery orders, PRBL insists, notwithstanding the fact that Magistrate Judge Roby imposed monetary sanctions for discovery abuses and this Court's prior warnings that dilatory conduct would be met with dismissal of their case.

However, the plaintiffs submit that they have, by now, provided defendants with all discovery and responses to interrogatories, and that plaintiffs have been deposed. PRBL does not dispute this, but continues to insist that dismissal is an appropriate sanction because it has been prejudiced by plaintiffs' pattern of delay. But "the sanction of dismissal with prejudice is

reserved for 'the most egregious circumstances.'" Callip, 757 F.2d at 1519. The record patently establishes the plaintiffs' chronic failure to timely comply with discovery requests and other dilatory conduct. The plaintiffs now whimper that they have since complied, albeit belatedly, with their obligations. Although not particularly convincing, the Court's warnings have perhaps finally prompted compliance. Moreover, absent from the record is any aggravating factor such as actual prejudice to PRBL,[4] or delay attributable either directly to the plaintiffs or to bad faith by counsel. Accordingly, the Court finds that dismissal with prejudice is not yet warranted.

### III.

Finally, the Court considers the parties' requests to extend deadlines associated with exchanging expert reports. The plaintiffs' motion for an extension to provide expert reports is GRANTED. Likewise, PRBL's motion to strike plaintiffs' expert witnesses is DENIED, and its motion to extend its deadline to provide expert reports is GRANTED. Assuming the parties cannot agree on extensions, the plaintiffs' expert reports (if still

---

[4] It seems that any prejudice can be cured by extending deadlines for PRBL. If PRBL requests the plaintiffs' consent to extending any deadlines PRBL needs extended, the Court expects plaintiffs' cooperation. If plaintiffs refuse to cooperate, PRBL can seek relief from the Court. The Court will not tolerate another example of delay and will seriously consider dismissal with prejudice. Last warning. Moreover, the Court will also consider a request to sanction counsel under 28 U.S.C. § 1927.

outstanding) must be delivered to counsel for defendant not later than June 11, 2014, and counsel for defendant must deliver its expert reports not later than July 11, 2014.

Accordingly, The Town of Pearl River's motion for summary judgment is GRANTED and its motion to extend its deadline to submit expert reports is DENIED as moot; PRBL's motion to dismiss is DENIED; the plaintiffs' motion for extension of time to provide expert reports is GRANTED; PRBL's request to strike plaintiffs' expert witnesses is DENIED, and its motion to extend its deadline to provide expert reports is GRANTED.

New Orleans, Louisiana, June 4, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE